You're saying we have Mr. Gilbert for the appellant and you would like to reserve three minutes for rebuttal. So whenever you're ready. Good morning, your honors. My name is Jason Gilbert. I'm the attorney for the plaintiff appellant Michael Wilson. We are here today because the appendix is replete with issues of fact that require jury consideration. First, however, it is necessary to address the district court's erroneous and unexplained summary exclusion of segments of the record evidence. This issue is of critical importance as plaintiff's exhibits were obviously instrumental for purposes of keep your voice up and maybe try to speak into the microphone. It would be helpful, I think. Thank you. Thank you. The district court abused its discretion in excluding plaintiff's exhibits 1, 4, 5, 6, 7 and 11 submitted in opposition to defendant's motion for summary judgment as inadmissible hearsay not within any exception. The district court excluded these exhibits without any explanation, analysis or supporting case law. Exhibit 1 is plaintiff's contemporaneously taken notes which include a litany of examples of discrimination, harassment and retaliatory acts and complaints. Why do you need those notes? Why can't your client simply write an affidavit that said these things happened rather than relying on a prior written statement that says these things happened? Sure, Your Honor. So the notes are necessary because they document so many examples and to the extent the plaintiff's claims allege hostile work environment and to a large extent require to show a sum total of the employer's acts. But that doesn't answer Judge Robinson's question. He could literally say the same thing in an affidavit. Why can't he say the same thing? He could write it verbatim and then sign the affidavit and then if somebody were to challenge that, oh, you know, it's recently fabricated, then he'd be able to go back and you could argue that these come in to prove that they were created before he had a motive and then the other side could argue that he was clearly trying to gin up. Sure. He was trying to prep for litigation so the motive was still there. But that raises the same question. Sure. I mean, generally people can't take notes and get them admitted. It's hearsay. That's really standard operating procedure, right? Sure. So the distinction here is that the employer, despite our demands throughout discovery to produce records, notes, et cetera, of all the meetings, complaints, communications that the plaintiff made to the Human Resources Department, they claim no such records exist. Now how is that relevant to the hearsay question of whether the notes are present since impressions? I don't understand why the presence or absence of other evidence ever affects whether something is or is not hearsay. Tell me how those two are related concepts. The notes represent the best evidence of... Hearsay is admitted depending on whether it's the best evidence? Well, probative value is a consideration in terms of... What is that? That's 403, right? It could be 407. And where is it in the 800 series? I mean, I'm sorry, 807. I'm sorry. Oh, 807. Yeah, sorry. Now you're off presence since impression. Sure. But I think the notes could fall under multiple exceptions. I think they could fall under presence since impression. The notes could also fall under the business records rule because they were submitted to HR as part of his complaints of harassment. And those complaints were submitted pursuant to the hospital's own policies and procedures in their employee handbook, which require, as well as their code of conduct, which require that employees submit complaints directly to HR, especially when their supervisors are the harassers in a contemporaneous manner. They submit those complaints directly to HR. And again, the defendants produced no evidence of that. And these notes were submitted in that fashion and serve as the best evidence. Not that that's the be-all, end-all of whether or not hearsay should be a fall under an exception. Again, I think you keep mixing two things. I understand an argument that these are business records. But then when you start getting into best evidence and all that, I guess you're saying about whether they're really reliable and all. You can't mix and match these two concepts, right? You can't have they're almost business records, but because they're kind of business records, they're going to come in because we really need them. So if you wouldn't mind not mixing and matching the hearsay arguments analytically, I think it's helpful to explain to us why any particular record falls within a particular hearsay exception. Sure. So the complaint, the notes do fall under. In fact, fall under the present sense impression, the business records exception. What's your best case for the proposition that an employee's notes count as present sense impressions? He's writing down the story of what happened, what's happening in the course of his employment, that those notes count as present sense impressions. The contemporaneous nature in which they were. No, no, no. I said the best case. Give us a citation for a case that has found something similar. Because I'm not aware of any. So for specifically as it relates to notes, I don't have at hand a case that is specific in that sense. So what's your closest case? What's your best case where we have held that something materially similar is a present sense impression? The case I have at hand is the Jones case, which I cited in my brief and held that such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory. And here, he submitted those notes to his employer twice during the course of his employment. And so there's really no controversy as it relates to their authenticity or the fact that they were taken in the moment. And other, I have to move to the other exhibits, which 4, 5, 6, and 7 are e-mails, correspondence, again submitted as complaints documenting harassment and discrimination. So when someone sends an e-mail at work, it becomes a business record and it becomes non-hearsay? Only to the extent it was submitted in compliance with specific explicit written employer policies, which these were. What if you had a policy that says document all conversations? Does that mean every e-mail ever sent at work becomes a business record? If the business requires that those records be kept in the ordinary course of business, then I would argue yes. Okay. You've reserved three minutes for rebuttal. Why don't we hear from Mr. Pope? Thank you, Your Honor. Oh, and just before, Mr. Pope, you start, Mr. Grubel, when you do get back up and rebuttal, if you could just point us when you come back up to which page in your brief is this Jones case that you're referring to. I think that would be helpful. So just have that citation ready for us. Mr. Pope. May it please the Court, John Huston Pope, Epstein, Beckner, and Green, for Appley, the New York and Presbyterian Hospital. There are two egregious limitations, and egregious in the sense that they have eviscerated the case of the plaintiff, that have stood in the way of this being any sort of successful appeal. One is, of course, that the noncompliance with Rule 56.1 meant that many, many of the statements that we put in our statement of material facts not in dispute were conceded and admitted and formed the basis of the judge's opinion. Can we tell which statements fall into that category, or are we left to sort of infer? Because I that doesn't tell me at all what the Court actually did. Yes, Your Honor. It wasn't that she, that the judge below laid out a list for you. What she did was she put citations into the record of when she was relying upon our statement and their statement together as being an admission. And many of those statements that are cited to are the ones that are at issue that we're talking about, where there was an argumentative answer and therefore she treated it as having been deemed admitted. So we went through and looked at this as well. And the statements deemed admitted you can find, for instance, on Special Appendix page 8, you can find where the judge cited to our statement of fact paragraph 133, and there 133, and it was one of these types of statements where they purported to deny it, but just argumentatively. So as you go through the citations to the statements of fact, you'll see that when they're paired together to show that that is the basis upon which the judge deemed it admitted, what we put. So it does exist there. So that's one aspect of it, Your Honors, and that wasn't challenged in the argument you have here. It's not challenged in the opening brief. It's not listed in the issue statement. It was raised for the first time, any response to it in the reply brief. And of course, it's too late in the reply brief to start bringing issues to this Court. That issue was conceded and should be determinative of this. Likewise with the hearsay issues that you just had discussions with plaintiff's counsel on. The hearsay issues were not raised in the opening brief here. They were not raised until the reply brief, and it's too late. It's too late. They knew it. It's on the face of the opinion below that this is an important aspect of how you get to what the record here is and what is going to be determined. The hearsay issues are there. For the first time in the reply brief, we hear about present sense impression, which doesn't apply. This is memory, not present sense of impression. This is all very much areas where I could give you, you know, a 14,000-word brief on it. And I don't think that you need that during oral argument. I don't think you need that after the fact. It's been waived. That is the rules of this Court. Those issues are not before you. And once you cut out that heart of the record, there is no record here to support the opposition to summary judgment. Can I ask about a piece of the record that was objected to in the brief in chief? And it has to do with this supposed conflict between Mr. Wilson's deposition testimony and certain statements in his affidavit. When I look at his deposition, I see him testify, I wasn't allowed to work overtime anymore. They go on and they ask a few more questions about that, ask whether he's treated the same as the others. He says, no, I wouldn't say we were treated the same. After we were made not exempt, the two of them continued to get overtime work where I wasn't allowed to at that point get any overtime work. There's some further follow-up. He says, yeah, they continued to work all the nighttime gigs and get paid overtime for that work, but I was never again put on any of those gigs. So he ties the nighttime gigs to the fact that he's alleging that they got overtime work and he didn't. In his subsequent affidavit, because he's confronted with this purported conflict, right? Oh, but you've admitted you turned down some nighttime gigs. He says, yeah, they were going to offset it with daytime work. They never offered me nighttime gigs for which I would get paid, which seemed entirely consistent with his affidavit. Where's the conflict there? Well, he was denying that he was taking nighttime work, Your Honor, and the point was that nighttime work was where there was overtime. There is a conflict there between the underlying facts of when he was willing to take assignments and he also had not It's his assertion that they were offsetting, but that wasn't consistent with anything else that was in the record. Well, it was his testimony. This is summary judgment. We only need some evidence in the record on the one side and I'm just trying to figure out where, even if you throw out the affidavit, you still have the deposition testimony repeatedly saying I wasn't getting overtime work. I guess we're making some inference that nighttime equals overtime, but given that comp time comes into play, I don't understand what would support that inference. Well, it is that nighttime is overtime, Your Honor. That was the only available time for overtime and he was the comp time wasn't that he was being forced to take comp time. I don't believe, Your Honor, he asserted that he was being forced to take comp time on it. He just felt that, okay, I work night and then I get to come in late tomorrow. Is it your position that the undisputed evidence in the record is that all nighttime work equated to overtime work? That there weren't offsets by, hey, stay home tomorrow during the day? I don't think that it's all nighttime work is overtime work, Your Honor, because there was the available option to the employees that they could take the comp time the next day if they had worked late, just like I let my associates come in late if they work a late night. I'm sorry? I'm having trouble hearing you. I apologize, Your Honor. Conversation is one thing, but if it's at too low a decibel, does the courtroom deputy have the ability to increase the volume in the speakers? Because maybe that's the issue. Okay, let's try again. That's fine. Yes, Your Honor, it's difficult to say that all nighttime work is overtime. It is all overtime opportunities because you can come in the next morning and thereby have overtime at night. If you choose, you can decide not to come in in the morning and offset it just because, for instance, you worked until 1 a.m. and showing up at 9 is rough. I do it with my associates. Is it your position that the undisputed summary judgment record indicates that the choice as to whether to offset nighttime work with staying home during the day rather than taking overtime belongs exclusively to the employee? It can't be a choice made by the employer? I believe that is the record, Your Honor. And where would I look? Mr. Wilson specifically testified otherwise, so we have to find a reason to ignore his testimony to say there's not a dispute. Well, I don't think that he necessarily testified to the contrary, Your Honor, and to the extent that he did, it was part of this contradictory testimony. I understand where you feel that there's not a contradiction here, but it would probably take me a minute or so to find the citations for you. I don't want to waste your time. Well, it really does come down to this, Your Honor, on this whole thing. The opportunities for overtime work were there for him, and he was not taking them. He's saying, essentially, well, I thought that if I took that, they would make me. I think that's what his testimony is saying. It's not that they were making me take the time off. It's I didn't bother taking it because I thought they would make me take the time off. And I don't think you're allowed to create an issue of fact by saying I speculated that if I had done something, the employer would have done something else. I think you have to at least test it once to have coherent and probative testimony. His testimony wasn't I guessed or I just didn't bother taking it because I thought. He said, following my misclassification, there were instances in which I was late or leave work early in order to assure that I did not surpass the 40 hours worked in one week. Well, he said he turned all of these assignments down, Your Honor. He said he said that he was going to be required to do the offset. Right. And this is not a shrinking violet, Your Honor. This is not somebody who couldn't go ahead and take that one instance to prove his point. He's saying I believe that I was going to be required to do that. Well, it's fine that he believed that, Your Honor. But that wasn't what the policy was. That wasn't what was going to happen to him. He just simply decided that that was what he thought would happen. And I don't think he gets to imagine his way to having an issue of fact, Your Honor. And that's what that is. It's imagining your way to an issue of fact, saying that despite the fact that I was never given the opportunity, despite the fact that I did that, that I can now say, well, the reason I didn't do it was because I was sure they were going to require me to take comp time in response. There was no written policy for comp time. There was no instance in which he was required to take comp time. He gave no testimony of that nature, Your Honor. There was nothing to support this fantasy that somehow or another that that was going to happen. And I think that that's because he's sitting there holding a record of that situation. I'm past my time, Your Honor. If there's no further questions, I'll sit down. Thank you. Thank you very much. Mr. Gilbert, you've reserved three minutes for rebuttal. Could you just start by pointing us to that case that you cited, the Jones case he said was in your brief? Thank you, Your Honors. Unfortunately, I cannot find it. But it is in the table of authorities. It's only cited in your reply brief? Yes, it's only cited in my reply brief. And would you agree with your adversary that generally, in our view, issues that are not raised in the blue brief and raised for the first time on reply are deemed abandoned on appeal? Would you agree that is our general rule? Only to the extent that in the issues presented, if it weren't covered by that. However, the issues presented stated quite clearly that the judge engaged in abusive discretion in failing to consider evidence. It did not state hearsay, but it failed to consider facts in the statement of facts, I believe, which would be. You don't cite any of the federal rules of evidence in the opening brief, correct? Correct. I do not. But moving on to the contradiction issue. This court has held that if there are plausible explanations for discrepancies in a party's testimony, the court considering some judgment of an earlier account that was later. The court should not disregard that testimony. And similarly, in Maxwell, this court held that at worst, the deposition answer is left in ambiguity that the later declaration clarified. And in such cases, it would be an abusive discretion in manifest injustice to not consider his testimony simply because the court misinterpreted whether it was a contradiction or not. There was no contradiction. And it was not a voluntary matter whether or not he could take compensatory time off. Again, unfortunately, this goes back to excluded evidence, but it is in the record. It's documented throughout his notes and his communications with human resources. Can we stick to the deposition and to the affidavit? And if you could turn maybe with precision to the question that Judge Robinson had raised. In your view, they are not mutually inconsistent, right? Absolutely not. Could you explain why those two statements are not mutually inconsistent without going to some of the excluded evidence? I think, Your Honor, you hit the nail on the head. He said quite clearly, you said that we were treated exactly the same. And I would state that the difference was after that exemption changed, they continued to work all the nighttime gigs and get paid overtime for that work, but I was never again put on any of those gigs. In other words, I felt like I was being punished for the exemption change because I no longer got any of that work. But they continued not only to get the work, but they also got paid overtime for it. He did not state that being permitted to work nighttime gigs was exclusively overtime work. He was consistent at all times that part of the terms and conditions that he was told about his employment were that he would be overtime exempt, but that he would be permitted compensatory time off in order to compensate him for the extra hours worked. And that was not really ever applied until he was reclassified as being a non-exempt employee under the FLSA. And then it was used in a retaliatory manner in order to punish him for engaging in the protected activity. Beyond my time. Thank you very much.